CUYAHOGA COUNTY HOSPITAL, APPELLANT, *v.* CITY OF CLEVELAND, APPELLEE.

(No. 47090—Decided March 19, 1984.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Patrick Carroll,* for appellant.

*Mr. Nick Tomino* and *Ms. Judith Rawson,* for appellee.

CORRIGAN, J. Plaintiff appeals from the trial court's decision that the city of Cleveland was not liable for the medical services rendered to four city prisoners. Plaintiff contends that the nature of the offense upon which a prisoner is charged is not the proper basis for determining responsibility for the prisoner's medical treatment at the time of the arrest. We agree and reverse the judgment.

The facts of this case are not in dispute. At various times over a period of one year, four individuals[1] were arrested by Cleveland police officers and taken to the plaintiff-hospital for medical treatment. Three of the prisoners were charged, and eventually indicted by the Cuyahoga County Grand Jury,

---

[1] The four individuals are:

(1) Donald Ray Gates: fugitive, in violation of R.C. 2963.11;

(2) Willie Calloway: charged with and indicted for two counts of felonious assault, breaking and entering, and theft;

(3) Anthony Gephart: charged with and indicted for kidnapping and aggravated robbery;

(4) David Whitt, a.k.a. David Bartunck: charged with breaking and entering; indicted for breaking and entering, grand theft, safe breaking, and felonious assault.

with felonies under the Ohio Revised Code. The fourth prisoner was a fugitive and was eventually released to the custody of out-of-state officials. The total cost for the medical services provided was $13,045.

Plaintiff asserts two assignments of error.

"I. The trial court erred in holding that the determination of whether or not a municipality is responsible for the payment of medical services rendered to a prisoner in its custody is based solely on the statutory offense for which the prisoner is arrested."

The issue in the present case is the extent to which the arresting municipality is responsible to provide such medical services. It is plaintiff's position that a person arrested by a municipal police officer for a felony offense is the responsibility of that municipality until such time as that person is formally charged by the county grand jury. Upon indictment, both custody of and responsibility for the prisoner is transferred from the municipality to the county. *University Hospitals of Cleveland* v. *Cleveland* (1971), 28 Ohio Misc. 134 [57 O.O.2d 208].

Defendant contends, and the trial court agreed, that the responsibility rests with the municipality for the care and sustenance of a person charged with violation of a municipal ordinance, and with the county for violators of state statutes, regardless of who makes the arrest. 1976 Ohio Atty. Gen. Ops. No. 76-012.

We do not agree with defendant's contention that the "nature of the offense" is the determinant. The responsibility for the care and sustenance of a prisoner falls upon the one who exerts actual, physical dominion and control over the prisoner. When physical control is transferred, the responsibility is transferred along with it and the cost of care can be properly prorated. The care the prisoner receives is not incident to the crime, but to the custody. See R.C. 753.02 and *University Hospitals of Cleveland, supra.*

The use of the "nature of the offense" creates unnecessary complications, for it is not an easy or quick determination to make, and is subject to alterations or variations throughout the criminal system. In this case, the situation of the apprehension of the fugitive is an excellent example. The Cleveland Police arrested the fugitive under the authority of R.C. 2963.11, which allows for warrants to be issued for the arrest of those "fle[eing] from justice."[2] The fugitive received medical care and was under the authority of the Cleveland Police until he was released by the city into the custody of out-of-state law enforcement officials. The fugitive was never charged or indicted for a violation of Ohio law. Because situations often arise where no offense has occurred, the responsibility for the medical treatment can best be determined by asking who had actual control over the patient at the time the treatment was given.

Plaintiff's first assignment has merit, and the judgment must, therefore, be reversed.

"II. The trial court erred in finding that the city of Cleveland was not liable to the Cuyahoga County Hospital for the costs of medical services rendered to prisoners in the custody of the city of Cleveland."

[2] R.C. 2963.11 states in pertinent part:

"When * * * any person within this state is charged with the commission of any crime in any other state and with having fled from justice * * * the judge * * * shall issue a warrant directed to any peace officer, commanding him to apprehend the person named therein, wherever he may be found in this state, and to bring him before the * * * judge * * * to answer the charge or complaint * * *."

72

Plaintiff argues that by bringing prisoners in custody to the hospital for medical care, the Cleveland Police, as employees of the city of Cleveland, entered into an implied contract to pay for such services.

This argument has no validity. A municipal corporation cannot generally be held liable for quasi- or implied contracts or for claims based upon the theory of *quantum meruit. Eastlake* v. *Davis* (1952), 94 Ohio App. 71, 74 [51 O.O. 279].

Plaintiff's first assignment has merit. Rather than reversing and remanding the case, we enter judgment for plaintiff Cuyahoga County Hospital on its claim against the city of Cleveland in the sum of $13,045 and costs.

Judgment reversed and final judgment entered.

*Judgment reversed.*

DAY, C.J., and PATTON, J., concur.